**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARLAINA LADUE,**

                    **Plaintiff,**                 **3:12-cv-600**
                                                         **(GLS)**

                    **v.**

**MICHAEL ASTRUE,**
Commissioner of Social Security,

                    **Defendant.**
_____

**APPEARANCES:**                       **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    SERGEI ADEN
United States Attorney               Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Marlaina Ladue challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and supplemental security income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1 at 1.) After reviewing the administrative record and carefully considering Ladue's arguments, the Commissioner's decision is reversed and remanded.

## II. Background

On February 2, 2009, Ladue filed applications for DIB and SSI under the Social Security Act ("Act"), alleging disability beginning October 1, 2008. (*See* Tr.[1] at 12, 196-203.) After her applications were denied, Ladue requested a hearing before an Administrative Law Judge (ALJ), which was held on January 4, 2011. (*See id.* at 62-78, 92-93.) On January 24, 2011, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-3, 12-22.)

Ladue commenced the present action by filing a Complaint on April 9,

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 8.)

2012, seeking review of the Commissioner's determination. (*See* Compl.) The Commissioner filed an answer and certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Both parties, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 11, 12.)

### III. Contentions

Ladue contends that the Commissioner's decision was the product of legal error and is unsupported by substantial evidence. (*See generally* Dkt. No. 11.) Specifically, Ladue claims that the ALJ's residual functional capacity (RFC) analysis was flawed because it did not contemplate: (1) deficits in her fine motor skills; and (2) limitations resulting from her mental impairments. (*See id.* at 1-5.) The Commissioner counters that the ALJ employed the proper legal standards and that his decision is supported by substantial evidence. (*See generally* Dkt. No. 12.)

### IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Dkt. No. 11 at 2; Dkt. No. 12 at 1-13.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) is well established and will not be

3

repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

## A. Residual Functional Capacity (RFC)

*1. Physical RFC*

Ladue contends first that the ALJ erred in assessing her RFC by failing to consider her deficits in fine motor skills. (*See* Dkt. No. 11 at 2-4.) The Commissioner counters that the ALJ considered the appropriate record evidence and that his RFC determination is supported by substantial evidence. (*See* Dkt. No. 12 at 16-20.) The court agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In reaching an RFC determination, an ALJ must consider "all of the relevant medical and other evidence" in the record, as well as all of a claimant's "medically determinable impairments," including those "that are not 'severe.'" *Id*. §§

4

404.1545(a)(2)-(3), 416.945(a)(2)-(3).

Here, the ALJ determined that Ladue had the RFC "to perform the full range of sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a)," and that she could lift and/or carry "[ten] pounds occasionally, less than [ten] pounds frequently, stand[] more than two hours in an eight-hour workday, walk[] more than two hours in an eight-hour workday," and sit "about six hours in an eight-hour workday." (Tr. at 19.) Ladue does not contest the ALJ's findings as to her exertional limitations, but argues that the ALJ omitted from his RFC analysis consideration of examining consultative physician Justine Magurno's observation that she had "difficulty using a button and a zipper due to [her] tremor," and that she had "[m]oderate limitations for fine motor activity." (*Id.* at 313; *see* Dkt. No. 11 at 2-4.) Dr. Magurno opined further that Ladue's tremor was "most likely due to [her] hyperthyroidism," which, as of the date of examination, was "uncontrolled." (Tr. at 313.)

Ladue's contention is plainly incorrect as the ALJ explicitly discussed the fine motor deficits observed by Dr. Magurno. (*See* Tr. at 16, 19.) In concluding that Ladue was capable of performing the full range of sedentary work, the ALJ noted that Dr. Magurno's examination occurred

5

"only a few months after treatment began" for her hyperthyroidism. (*Id.* at 19.) The ALJ also considered Dr. Magurno's observation that Ladue had full bilateral grip strength and that she was able to tie a bow in a normal fashion. (*See id.* at 16, 313.) Additionally, as highlighted by the ALJ, Ladue testified that, as long as she was sitting, she could wash dishes, cook, and likely garden. (*See id.* at 20, 71-72.) When asked by the ALJ whether she had "any problem" with "grasping and holding," Ladue responded, "[n]ot really." (*Id.* at 74.) Finally, one year after Dr. Magurno's examination of Ladue, her primary care source indicated that, upon examination, she exhibited "no motor weakness." (*Id.* at 17, 413.) Accordingly, the ALJ's physical RFC analysis was free from legal error and is supported by substantial evidence.

  *2. Mental RFC*

  Ladue argues next that, in assessing her RFC, the ALJ failed to consider the functional limitations imposed by her mental impairment. (*See* Dkt. No. 11 at 4-5.) Again, the Commissioner contends that the ALJ considered the appropriate record evidence, and that his RFC determination is supported by substantial evidence. (*See* Dkt. No. 12 at 20-23.) The court agrees with Ladue that the ALJ's mental RFC analysis

6

was flawed, and that remand is required.

In determining the claimant's mental RFC, the ALJ cannot simply rely on the limitations articulated in the severity analysis at steps two and three of the sequential analysis,[2] but must instead provide "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996). The functions to be considered are "basic work-related mental activities . . . such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." *Tilbe v. Astrue*, No. 5:10-CV-910, 2012 WL 2930784, at *11

---

[2] At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In assessing the severity of an adult claimant's mental impairments, the ALJ must utilize a "special technique." *Id.* §§ 404.1520a, 416.920a. This technique requires the ALJ to rate the claimant's functional limitations in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). Where a mental "impairment is deemed severe [at step two], but does not meet or equal a listed mental disorder [at step three], the Commissioner" must analyze the claimant's RFC. *Tilbe v. Astrue*, No. 5:10-CV-910, 2012 WL 2930784, at *11 (N.D.N.Y. July 17, 2012) (internal quotation marks and citations omitted).

7

(N.D.N.Y. July 17, 2012) (citing 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c)).

At steps two and three of the sequential analysis, the ALJ found that Ladue's anxiety constituted a severe impairment, but did not meet or medically equal a listed impairment.[3] (*See* Tr. at 15-18.) In undertaking his subsequent RFC analysis, the ALJ acknowledged his obligation, as articulated in SSR 96-8p, to provide "a more detailed assessment [than that set out at steps two and three] by itemizing various functions contained in the broad categories found in paragraph B." (*Id.* at 18.) Despite this acknowledgment, the ALJ's RFC analysis was entirely devoid of any such discussion of Ladue's ability to perform work-related mental activities.[4] The

---

[3] The ALJ's determination that Ladue's anxiety constituted a severe impairment appears to contradict his later conclusion that she suffered no more than "mild" limitations in the first three "paragraph B" categories, and no episodes of decompensation. (*Compare* Tr. at 15-17, *with id.* at 18); *see* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (stating that, unless the claimant has "more than a minimal limitation in [her] ability to do basic work activities," a finding of non-severity as to mental impairments will generally be made where the ALJ rates the degree of limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area"). This apparent incongruity, however, in no way absolved the ALJ of his responsibility to undertake an appropriate mental RFC analysis.

[4] At the close of his RFC analysis, the ALJ notes that, although Ladue "has a longstanding diagnosis of Graves' disease with accompanying anxiety[,] as of the hearing date, despite two continuances,

8

ALJ's mental RFC was therefore the product of legal error, and reversal and remand is required. *See Dickson v. Astrue*, No. 1:06-CV-0511, 2008 WL 4287389, at *11 (N.D.N.Y. Sept. 17, 2008)

### VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

Gary L. Sharpe
Chief Judge
U.S. District Court

---

there are no treating medical source opinions regarding limitations that would preclude" her ability to perform the physical demands of sedentary work. (Tr. at 21.) To the extent, if it all, the ALJ relied on this absence of treating-source limitation assessments as a basis for failing to discuss Ladue's ability to perform work-related mental activities, that reliance was improper. *See Dickson v. Astrue*, No. 1:06-CV-0511, 2008 WL 4287389, at *13-14 (N.D.N.Y. Sept. 17, 2008).

9

February 1, 2013
Albany, New York